UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

PERRY PIERCE,

               Plaintiff,

v.

P. BAILEY et al.,

               Defendants.

_____/

Case No. 1:22-cv-863

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a county detainee under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Bailey and Herbert. The Court will also dismiss Plaintiff's official capacity claims against Defendant Robbinson. Plaintiff's personal capacity excessive force claim against Defendant Robbinson remains in the case.

## Discussion

I. **Factual Allegations**

Plaintiff is presently incarcerated at the Berrien County Jail (BCJ) in St. Joseph, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Sheriff P. Bailey,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Lieutenant Unknown Herbert, and Sergeant K. Robbinson. Plaintiff indicates that he is suing Defendants in both their official and personal capacities. (ECF No. 1, PageID.2.)

Plaintiff alleges that on January 29, 2022, Defendant Robbinson assaulted him by spraying mace in his eyes "for unlawful reasons." (*Id.*, PageID.3.) Plaintiff could not see out of his left eye for three days. (*Id.*) He submitted a grievance regarding the incident to Defendant Bailey but did not receive a response. (*Id.*) Plaintiff contends he did not receive a response because "there is no proper grievance proce[]dure to properly redress prisoner complaints." (*Id.*)

Plaintiff attempted suicide on June 2, 2022, and was sent to the hospital, where he was placed in the mental health ward. (*Id.*) When he returned to BCJ, Defendant Herbert placed him in a suicide holding cell. (*Id.*, PageID.4.) Plaintiff contends his placement in that cell "disregard[ed] the actions of the mental health [personnel] who had [released him] from the mental health facility because [he] had no more suicide [tendencies]." (*Id.*) Defendant Herbert told Plaintiff that he would not be going back to general population because he had tried to commit suicide. (*Id.*) Plaintiff contends that he has been denied all rights that general population receives. He avers that he stays in the cell for 24 hours a day without exercise. (*Id.*) He cannot access his personal property and can only shower every other day. (*Id.*) Plaintiff avers that the lights stay on all day, "den[y]ing [him] proper sleep." (*Id.*) Plaintiff contends that Defendant Bailey said he would investigate the issue, but he has not heard back. (*Id.*)

Based on the foregoing, Plaintiff asserts claims regarding his Fourteenth Amendment due process and equal protection rights. The Court also construes Plaintiff's complaint to assert claims related to the grievance procedure at BCJ. Plaintiff seeks $20,000 from each Defendant. (*Id.*, PageID.5.) He also wants Defendants to institute a "proper grievance procedure for prisoner[s] to properly redress their complaints." (*Id.*)

## II.      Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983

5

is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.     **Official Capacity Claims**

As noted above, Plaintiff sues Defendants in both their official and personal capacities. (ECF No. 1, PageID.2.) Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). An official capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *see also Graham*, 473 U.S. at 165–66.

Here, because Defendants represent Berrien County, Plaintiff's suit against them in their official capacities necessarily intends to impose liability on the county. Berrien County, however, may not be held vicariously liable for the actions of its employees under Section 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell*, 436 U.S. at 694. Instead, a county is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire*, 330 F.3d at 815 (6th Cir. 2003). "Governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

6

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the Sixth Circuit has explained that a custom "for purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id*. at 508. Here, Plaintiff's complaint is devoid of any allegations suggesting that his alleged constitutional injury was the result of an official policy or custom employed by Berrien County. The Court, therefore, will dismiss Plaintiff's official capacity claims against Defendants.

### B.   Individual Capacity Claims

#### 1.   Defendant Bailey

Plaintiff's sole allegation against Defendant Bailey—the Berrien County Sheriff—is that he failed to respond to his grievances and complaints. However, Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Because Plaintiff's sole allegation against Defendant Bailey is that he failed to respond to an administrative grievance, Plaintiff fails to state a Section 1983 claim against Defendant Bailey.

Furthermore, to the extent that Plaintiff intended to hold Defendant Bailey liable for the actions of his subordinates, government officials, such as Defendant, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899;

7

*Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." […] We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300) (citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976)); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff has failed to allege that Defendant Bailey engaged in any active unconstitutional behavior. Further, Plaintiff has failed to allege any facts showing that Defendant Bailey encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to show that Defendant Bailey was personally involved in the alleged violation of Plaintiff's rights.

Accordingly, for the reasons set forth above, Plaintiff fails to state a claim against Defendant Bailey.

8

### 2.       Defendant Robbinson

Plaintiff asserts that on January 29, 2022, Defendant Robbinson assaulted him by spraying mace in his eyes. (ECF No. 1, PageID.3.) He contends that he could not see out of his eye for three days. (*Id.*) Plaintiff's claim suggests a use of excessive force by Defendant Robbinson.

Claims of excessive force are governed by the provisions of the Fourth, Eighth, and Fourteenth Amendments, depending upon where in the criminal process the use of force occurs. For convicted prisoners, the Eighth Amendment's ban of cruel and unusual punishment governs the use of excessive force. *See Wilkins v. Gaddy*, 559 U.S. 34, 37–39 (2010). For pretrial detainees, the protection against the use of excessive force is afforded by the Fourteenth Amendment's Due Process Clause. *See Kingsley v. Hendrickson*, 576 U.S. 389, 392–93 (2015); *see also Westmoreland v. Butler Cnty., Ky.*, 29 F.4th 721, 727 (6th Cir. 2022), *reh'g en banc denied*, 35 F.4th 1051 (6th Cir. 2022). Finally, the Fourth Amendment protects against the use of excessive force against someone "in the course of an arrest, investigatory stop, or other 'seizure.'" *Graham v. Connor*, 490 U.S. 386, 395 (1989). Fourth Amendment protections apply for "one who has been arrested but has not yet received a judicial determination of probable cause, either through an arrest warrant or a post-arrest probable cause hearing." *Colson v. City of Alcoa, Tenn.*, 37 F.4th 1182, 1187 (6th Cir. 2022) (citing *Aldini v. Johnson*, 609 F.3d 858, 866 (6th Cir. 2010)).

It does not appear that Plaintiff was an arrestee at the time of the events alleged in his complaint. Moreover, the complaint is devoid of facts that would permit the Court conclusively to determine whether Plaintiff was a convicted prisoner or a pretrial detainee on January 29, 2022, when he alleges the use of excessive force occurred. In any event, regardless of which constitutional provision applies, Plaintiff has set forth a plausible excessive force claim against Defendant Robbinson.

### 3.    Defendant Herbert

Plaintiff contends that Defendant Herbert has violated his due process rights and has discriminated against him for having a mental disability by denying him the rights he would enjoy in general population by placing him in the suicide observation cell. (ECF No. 1, PageID.4.) Plaintiff contends that he stays in the cell 24 hours a day, receives no exercise, has no access to his personal property, can only shower every other day, and suffers from constant lighting, which affects his sleep. (*Id.*)

### a.    Claims Regarding Conditions of Confinement

Plaintiff's due process claims concern his conditions of confinement within the suicide observation cell. As noted *supra*, Plaintiff's complaint is devoid of facts regarding whether he was a convicted prisoner or a pretrial detainee at the time of the events alleged in his complaint. The Eighth Amendment's prohibition against cruel and unusual punishment obligates officials to provide humane conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). Those protections are incorporated for pretrial detainees by the Due Process Clause of the Fourteenth Amendment. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018).

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must

10

"know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. Deliberate indifference is "a high standard of culpability, 'equivalent to criminal recklessness.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 606 (6th Cir. 2022) (quoting *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020)).

Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene*, 22 F.4th at 605 (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). As noted above, however, in *Kingsley*, the Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. *Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial-detainment contexts." *Brawner*, 14 F.4th at 592.

Subsequently, in *Brawner*, the Sixth Circuit modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness. *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that to demonstrate deliberate indifference, "[a] pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* at 596 (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)). He or she must prove that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* (citation and quotation marks omitted).

11

*Brawner*, however, "left the [objective] prong untouched." *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022). Under that prong, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth [or Fourteenth] Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam). "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* Plaintiff takes issue with his placement in the suicide observation cell itself. He also alleges the following deprivations due to his placement in the suicide observation cell: (1) denial of exercise; (2) no access to his personal property; (3) having showers limited to every other day; and (4) being subjected to constant lighting, affecting his sleep. (ECF No. 1, PageID.4.) The Court considers each of those conditions below.

### i.      Placement in Suicide Observation Cell

Plaintiff takes issue with Defendant Herbert's decision to place him in the observation cell after he returned from the hospital. He contends that she disregarded the mental health personnel at the hospital who had released him because he did not have any more suicidal tendencies. (*Id.*)

The BCJ and its staff have a duty to protect Plaintiff from the risk of suicide. *See Barber v. City of Salem*, 953 F.2d 232, 239–40 (6th Cir. 1992) (holding that failure to take adequate precautions to protect against suicide may constitute deliberate indifference); *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 665 (7th Cir. 2012) (noting that "prison officials have an obligation to intervene when they know a prisoner suffers from self-destructive tendencies"). Plaintiff's scant allegations are insufficient for the Court to infer that his placement in the cell upon his return was punitive in nature. *See Stafford v. Edmonds*, No. 95-1107, 1996 WL 38222, at *1 (6th Cir. Jan. 30, 1996) (citing *Zarnes v. Rhodes*, 64 F.3d 285, 291–92 (7th Cir. 1995)). Moreover, Plaintiff's

placement in the observation cell, standing alone, does not rise to the level of an extreme deprivation. The fact that he was kept in observation after being released from the hospital does not indicate deliberate indifference. *See Powell v. Mich. Dep't of Corr.*, No. 1:19-cv-627, 2019 WL 5781971, at \*6 (W.D. Mich. Nov. 6, 2019).

### ii.    Denial of Exercise

Plaintiff avers that his placement in the suicide observation cell has resulted in a denial of exercise because he stays in the cell all day. (ECF No. 1, PageID.4.) "[T]otal or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)). Nothing in Plaintiff's complaint, however, suggests that Defendant Herbert or any other named Defendant was personally involved in the alleged deprivation of exercise time. Further, Plaintiff does not allege that his cell was too small to permit any exercise or that he suffered any ill effects from the limitation on yard privileges. Plaintiff's conclusory allegations suggest only a temporary inconvenience, which does not rise to the level of an Eighth or Fourteenth Amendment violation. *See, e.g.*, *May v. Baldwin*, 109 F.3d 557, 565–66 (9th Cir. 1997) (holding that the denial of out-of-cell exercise for 21 days did not rise to an Eighth Amendment violation); *Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir. 1989) ("Denial of recreation for a short period, per se, is not a constitutional violation."); *Davenport v. DeRobertis*, 844 F.2d 1310 (7th Cir. 1988) (upholding a 90-day segregation threshold before five hours of weekly out-of-cell exercise is required); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (concluding that there was no Eighth Amendment violation when plaintiff was held in segregation without outdoor exercise for 28 days).

### iii.     Access to Personal Property

Plaintiff also contends that he could not access his personal property while in the suicide observation cell. (ECF No. 1, PageID.4.) Again, nothing in the complaint suggests that Defendant Herbert or any other named Defendant personally deprived Plaintiff of access to his property. Regardless, the inability to access personal property while in an observation cell simply does not rise to the level of an extreme deprivation. *Cf. Sanders v. Smith*, No. 1:11-cv-892, 2011 WL 5921426, at *11 (W.D. Mich. Nov. 27, 2011) (concluding that inmate failed to state an Eighth Amendment claim premised upon placement on a paper restriction and the destruction of his property); *Jones v. Caruso*, No. 2:11-cv-65, 2011 WL 3740578, at *9 (W.D. Mich. Aug. 24, 2011) (confiscation of an inmate's property does not rise to the level of an Eighth Amendment violation).

### iv.     Denial of Showers

The Constitution does not mandate showers; it requires only that prisoners be allowed to maintain hygiene. Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (discussing temporary inconveniences generally); *see also Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (finding that allegations of overcrowded cells and denials of daily showers and out-of-cell exercise do not rise to constitutional magnitude, where a prisoner is subjected to the purportedly wrongful conditions for six days one year and ten days the next year); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000) (concluding that the denial of showers and other personal hygiene items for six days was not actionable under the Eighth Amendment); *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not

14

result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (concluding that an 11-day stay in an unsanitary cell was not unconstitutional because of the relative brevity of the stay and availability of cleaning supplies); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

The refusal to allow the occasional shower constitutes a mere temporary inconvenience. *See Siller*, 2000 WL 145167, at *2; *Metcalf* 1998 WL 476254, at *2; *Evans v. Bruge*, No. 1:20-cv-833, 2020 WL 5742748, at *5 (W.D. Mich. Sept. 25, 2020) (finding the denial of two showers, one week apart, is a mere temporary inconvenience that does not violate the Eighth Amendment); *Rogers v. Mackie*, No. 1:20-cv-394, 2020 WL 3989432, at *8 (W.D. Mich. July 15, 2020) (finding the denial of soap and a shower for two days did not violate the Eighth Amendment); *Lewis v. Guinn*, No. 2:05-cv-287, 2006 WL 560648, at *4 (W.D. Mich. Mar. 3, 2006) (finding the deprivation of a single shower does not implicate the Eighth Amendment); *see also Barnett v. Fitz*, No. 1:19-cv-987, 2020 WL 205288, at *4 (W.D. Mich. Jan. 14, 2020) (holding that an allegation that the defendant "would skip [Plaintiff for] showers and gym time because [Plaintiff] wasn't at the door" did not permit a determination that the defendant deprived the plaintiff of hygiene and exercise within the meaning of the Eighth Amendment). Here, Plaintiff contends that he is only allowed to shower every other day and does not allege that he was denied the ability to maintain hygiene on the days he was not allowed to shower. Moreover, nothing in the complaint suggests that Defendant Herbert was personally responsible for limiting his shower times. Plaintiff's complaint regarding showers simply does not rise to the level of an Eighth or Fourteenth Amendment violation.

### v.     Constant Light and Sleep

Plaintiff also contends that the lights in the suicide observation cell are constantly on, denying him "proper sleep." (ECF No. 1, PageID.4.) The Court recognizes that "sleep undoubtedly counts as one of life's basic needs." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). However, Plaintiff's vague allegations do not rise to the level of an Eighth or Fourteenth Amendment violation. While Plaintiff alleges that the lighting interfered with his sleep, his complaint is devoid of facts from which the Court could infer that any of the named Defendants were aware of Plaintiff's issues with the lighting and deliberately ignored them. *See, e.g.*, *Chavarria v. Stacks*, 102 F. App'x 433, 435 (5th Cir. 2004) (holding that constant illumination of a prison administrative unit at night in order to prevent guards from being assaulted was a reasonable security measure and thus did not violate the Eighth Amendment); *Zatko v. Rowland*, 835 F. Supp. 1174, 1181 (N.D. Cal. 1993) (noting that continuous light depriving a prisoner of sleep would be unconstitutional but holding there was no constitutional violation because the officers did not use the light to keep the prisoner awake).

Overall, Plaintiff's placement in the suicide observation cell and the conditions he experienced therein do not rise to the level of a deprivation that implicates the Eighth or Fourteenth Amendment. Plaintiff's claims against Defendant Herbert premised upon these conditions will, therefore, be dismissed.

### b.     Equal Protection

Plaintiff vaguely suggests that Defendant Herbert discriminated against him for having a mental disability. (ECF No. 1, PageID.4.) Plaintiff's claim of discrimination implicates the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially

16

a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). The Sixth Circuit has described a universe of three types of equal protection claims:

> "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty. Ohio,* 430 F.3d 783, 788 (6th Cir. 2005). [Plaintiff] does not argue an infringement of a fundamental right or that he is a member of a suspect class. Rather, [Plaintiff] relies on the third argument—whether others "similarly situated" received different treatment "without any rational basis for the difference." *Id.* This is called a "class-of-one" theory. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam).

*Davis v. Detroit Pub. Schs. Cmty. Dist.*, 835 F. App'x 18, 22 (6th Cir. 2020). "[T]he hallmark of [a class-of-one] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (internal quotes omitted).

Plaintiff does not allege that he was denied a fundamental right. Nor does he claim that Defendant Herbert targeted a suspect class.[2] Moreover, "[i]t is well established that disability is not a suspect class for purposes of equal protection analysis." *Popovich v. Cuyahoga Cnty. Court of Common Pleas, Domestic Relations Div.*, 276 F.3d 808, 811 (6th Cir. 2002); *see also Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000) (stating "disability-based classifications do not involve either a suspect or semi-suspect class"); *S.S. v. Eastern Kentucky Univ.*, 532 F.3d 445, 457 (6th Cir. 2008) (stating "[d]isabled persons are not a suspect class for purposes of an equal protection challenge"); *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 442 (1985) (holding persons

---

[2] "[P]risoners are not a suspect class," *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000), "nor are classifications of prisoners," *Mader v. Sanders*, 67 F. App'x 869, 871 (6th Cir. 2003), for example, prisoners holding the same security classification, *id.*, or prisoners who are labeled sex offenders.

with physical or mental disabilities are not part of a suspect class under the Equal Protection Clause).

Instead, Plaintiff claims Herbert housed him in a suicide observation cell for no rational reason, specifically because the hospital had released Plaintiff. Plaintiff is alleging a "class of one" equal protection claim.

To prove a class-of-one equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "[U]nless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

Because the crux of an equal protection violation is the treatment of similarly situated people differently, "[a] plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'" *Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) (quoting *Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015)). In other words, "the comparative [person] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or

18

the[ decision-maker's] treatment of them for it.'" *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Plaintiff fails to allege that there were others who were treated differently or that others were similarly situated in all relevant respects. *Umani,* 432 F. App'x at 460. Plaintiff's conclusory allegations of fact do not permit the Court to infer that he was treated differently than other similarly situated persons. *See, e.g.*, *Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013) ("Plaintiffs . . . fail to plead the existence of a similarly situated comparator . . . [therefore,] the Complaint does not contain sufficient factual matter to state a plausible claim."). Moreover, Plaintiff's complaint is wholly devoid of facts suggesting that Defendant Herbert intentionally and arbitrarily discriminated against him. Plaintiff's conclusory allegations do not suffice to state a claim. *See Iqbal*, 556 U.S. at 663 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). The Court, therefore, will dismiss Plaintiff's Fourteenth Amendment equal protection claim against Defendant Herbert.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Bailey and Herbert will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's official capacity claims against Defendant Robbinson. Plaintiff's personal capacity excessive force claim against Defendant Robbinson remains in the case.

An order consistent with this opinion will be entered.


Dated:   November 14, 2022                              /s/ Sally J. Berens
                                                         SALLY J. BERENS
                                                         U.S. Magistrate Judge