UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PERRY PIERCE,

       Plaintiff,                                       Hon. Hala Y. Jarbou

v.                                                    Case No. 1:22-cv-863

P. BAILEY, et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Perry Pierce, a county detainee in the Berrien County Jail (BCJ), filed a pro se complaint pursuant to 42 U.S.C. § 1983 against Berrien County employees Sheriff P. Bailey, Lieutenant Unknown Herbert, and Sergeant K. Robbins (incorrectly identified in the complaint as Kristin Robbinson), alleging claims based on events that occurred at the BCJ from January to June 2022. Following initial review by the Court pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C. § 1997e(c), Plaintiff's remaining claim was his excessive force claim against Defendant Robbins under either the Eighth or Fourteenth Amendment. (ECF No. 6 at PageID.31, 41; ECF No. 7.) Following initial review, counsel appeared for Plaintiff and filed a motion for leave to file an amended complaint, which I granted in part on April 5, 2023. (ECF Nos. 27 and 33.) Plaintiff filed his amended complaint on April 10, 2023, alleging a Fourth Amendment excessive force claim against Defendant Robbins, as he was an arrestee at the time of the incident and had neither been arraigned nor had a probable cause hearing. (ECF No. 35 at PageID.122, 124–25.)

Presently before me is Defendant Robbins's Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 36), arguing that she is entitled to qualified immunity. The motion is fully

briefed and ready for decision. For the reason that follow, pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **DENIED**.

## I. Background

### A.     Plaintiff's Allegations

Plaintiff has been diagnosed with mental illness, including bipolar disorder and paranoid schizophrenia, with suicidal ideation. On January 28, 2022, he was arrested and lodged in the BCJ for resisting and obstructing a police officer. At the time of the arrest, Plaintiff was experiencing delusions. Plaintiff was taken to the BCJ and placed in a male inmate holding cell with 11 other inmates. (ECF No. 35 at PageID.122.)

Security video from January 29, 2022, shows Plaintiff standing near the cell's glass door, appearing to call out to guards in an agitated manner. Six guards then gathered at the front of the cell to extract Plaintiff from the cell, intending to move him to a smaller isolation cell. When the guards opened the door, Plaintiff exited into their arms. The guards then took Plaintiff to the ground and placed him in handcuffs with his arms behind his back. Security video shows two guards leave to go to the destination cell while the remaining four guards carried Plaintiff by his arms and legs to the destination cell. (*Id.* at PageID.122–23.)

Security video shows that once Plaintiff was in the isolation cell, the four guards dropped him face first on to the floor. Five guards then gathered around Plaintiff, kneeling on his limbs, torso, and neck, apparently loosening the handcuffs while Plaintiff offered no visible resistance. While the five guards were dealing with Plaintiff, the sixth guard, Defendant Robbins, walked to the doorway to observe the events. Defendant Robbins then began shaking her pepper spray in anticipation of using it on Plaintiff. When Plaintiff's arms were released from the handcuffs, he put his arms on the floor beside his head and turned his head to see the guards. At that point all but one guard exited the cell, while Defendant Robbins remained in the doorway. The remaining guard

knelt on Plaintiff's legs, holding them folded, heels to butt, and then removed his taser and pointed it at the back of Plaintiff's head. Plaintiff was subdued and exhibited no active resistance. The security video shows that, as the sixth guard left the cell while Plaintiff remained on the floor, Defendant Robbins intentionally sprayed her cannister of pepper spray from the doorway directly into Plaintiff's face and eyes. Plaintiff alleges that the pepper spray caused him significant pain and discomfort and negatively impacted his vision. (*Id.* at PageID.123–24.)

### B. Security Videos

In support of her motion to dismiss, Defendant Robbins has presented security video from three different cameras depicting the events in question from three different views: (1) inside the holding cell with other inmates present; (2) the lobby/control center hallway outside the cell; and (3) the isolation cell. None of the video footage contains audio.

The video is fairly consistent with Plaintiff's description in his amended complaint. Beginning with the holding cell video, Plaintiff is shown standing in front of the cell door speaking or calling out to the guards while other arrestees/detainees are standing/sleeping/sitting nearby. Around 4:34:26, as the guards begin to assemble on the other side of the door, Plaintiff raises and moves his hand repeatedly and quickly back and forth, but it is not clear whether he is pounding on the door. As Plaintiff waits for the guards to open the door, he assumes what appears to be an aggressive stance and rocks back and forth. When the guards open the door, Plaintiff quickly walks out into their arms as they grab him and struggle to take him to the ground. The lobby/control video begins by showing a male guard milling about while other guards, including Defendant Robbins, are present. As the male guard approaches the cell door, five other guards (including Robbins) walk toward, and assemble in front of, the door. The male guard then opens the door and Plaintiff quickly walks out into the guards' arms. As the five guards struggle with Plaintiff, a sixth guard joins them, and they eventually get Plaintiff on the ground. Once Plaintiff is secured in

3

handcuffs, one guard leaves and walks ahead, while the five remaining guards carry Plaintiff to the isolation cell.

The final video shows the guards carrying Plaintiff into the isolation cell at around 4:35:49.493. Three guards, a male and two females, carry Plaintiff through the door. As they enter the cell, the female guard carrying Plaintiff's head/shoulders appears to lose her grip, and Plaintiff's head/upper torso falls a short distance to the ground. Four guards then grab Plaintiff and reposition him by turning him around with his head facing away from the door. Another guard joins those four, and the five guards restrain Plaintiff's arms and legs, apparently to remove his handcuffs, while Defendant Robbins watches just inside the doorway. During this time, Robbins removes her pepper spray cannister from her holster and begins to shake it. The female guards then leave the cell, followed by a male guard, leaving two male guards restraining Plaintiff. One of the male guard grabs Plaintiff's legs in the bent position, while the other male guard leaves the cell. After Plaintiff moves his left arm and turns his head to the left, the male guard places his hand on Plaintiff's back momentarily. Seconds later, with his knee still on Plaintiff's legs, the male guard draws his taser and points it at Plaintiff's head. As the male guard stands up from Plaintiff to leave, Defendant Robbins administers a burst of pepper spray toward Plaintiff's head. The guards then leave and close the door. After wiping his face with his shirt, Plaintiff washes his face and eyes with water at the sink, then returns to the door, where he continues calling out to the guards.

## II. Motion Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient

4

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*  As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

In general, when deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court's review is limited to the four corners of the pleading at issue. Fed. R. Civ. P 12(d); *see also Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1139 (W.D. Mich. 2019) (noting that "[i]n general, in deciding a Rule 12(b)(6) motion to dismiss the court is limited to considering only the pleadings") (citing *Rondigo, LLC v. Twp of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011)). Nonetheless, it is well established that, in some circumstances, a court may consider matters beyond the pleadings without converting the motion to one for summary judgment under Rule 56. For example, "a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims

contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). This includes the video footage that Defendant Robbins submitted, as Plaintiff refers to it in his amended complaint. In addition, the Sixth Circuit recently has made clear that district courts may consider video evidence in deciding qualified immunity issues at the motion to dismiss stage:

> In qualified-immunity cases, we've previously considered videos at the motion-to-dismiss stage. *See, e.g., Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017). And for good reason. Qualified immunity isn't just a defense to liability—it's immunity from the costs and burdens of suit in the first place. *Scott v. Harris*, 550 U.S. 372, 376 n.2, 127 S. Ct. 1769, 167 L.Ed.2d 686 (2007); *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009). If officers are entitled to qualified immunity and don't receive it at the earliest possible stage, then they lose its protections for as long as they continue to litigate. *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021) (highlighting the importance of applying qualified immunity even before discovery); *see Scott,* 550 U.S. at 376 n.2, 127 S. Ct. 1769. So when uncontroverted video evidence easily resolves a case, we honor qualified immunity's principles by considering the videos.

*Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022). The limitation, of course, arises when the video does not resolve the issue, and a factual dispute still remains. In such cases, the plaintiff's version of events must control. *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III.   Discussion

Robbins contends that dismissal is warranted on the basis of qualified immunity. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The qualified immunity inquiry requires a court to decide whether the facts as

alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the court can conclude either that no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236.

Although the Sixth Circuit has observed that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," *Wesley v. Campbell*, 779 F.3d 421, 433–44 (6th Cir. 2015), it has also said that when "pleadings in th[e] case are not ambiguous," and "it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings," the Court acts well within its discretion in granting a pre-answer motion to dismiss on the basis of qualified immunity. *Jackson v. Schultz*, 429 F.3d 586, 589–90 (6th Cir. 2005).

For purposes of the instant motion to dismiss, I accept as true Plaintiff's allegation that at the time of the incident, he was arrested without a warrant and had not been arraigned or afforded a probable cause hearing. (ECF No. 35 at PageID.122.) This allegation informs the constitutional analysis, as Sixth Circuit law holds that the Fourth Amendment governs excessive force claims under such circumstances. *Aldini v. Johnson*, 609 F.3d 858, 860 (6th Cir. 2010) (holding that the Fourth Amendment's "objective reasonableness" standard "protects pre-trial detainees arrested without a warrant through the completion of their probable-cause hearings"). Thus, Robbins's recitation of the "maliciously and sadistically for the very purpose of causing harm" standard from *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)—an Eighth Amendment case, (*see* ECF No. 37 at PageID.143), is irrelevant to the proper analysis here.

In evaluating an excessive force claim under the Fourth Amendment, the touchstone is whether the officer's conduct was "objectively reasonable" in light of the facts and circumstances surrounding the incident. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (the relevant inquiry in a pretrial detainee excessive force claim is whether the force purposefully or knowingly used was objectively reasonable). "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396). A defendant's subjective intentions are irrelevant to a Fourth amendment analysis. *Phelps*. 286 F.3d at 299. The inquiry is "highly fact-dependent" and "must take into account the 'perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.'" *Coley v. Lucas Cnty.*, 799 F.3d 530, 538 (6th Cir. 2015) (quoting *Kingsley*, 576 U.S. at 397). The inquiry must consider the government's "legitimate interests" in managing the facility, which include "preserv[ing] internal order and discipline and . . . maintain[ing] institutional security." *Coley*, 799 F.3d at 538 (internal quotations omitted). The *Kingsley* Court observed:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective *circumstances potentially relevant to a determination of excessive force.*

Kingsley, 576 U.S. at 397 (emphasis added) (internal citations omitted).

In support of her motion, Robbins cites cases from the Sixth Circuit holding that an officer's "use of pepper spray in a moderate, non-gratuitous way in an effort to control a detainee" who is recalcitrant or presents a threat to themselves or others does not amount to excessive force.

8

(ECF No. 37 at PageID.141 (citing, among others, *Monday v. Oullette*, 118 F.3d 1099 (6th Cir. 1997); *Siggers v. Renner*, 37 F. App'x 138 (6th Cir. 2002); and *Combs v. Wilkinson*, 315 F.3d 548 (6th Cir. 2002)).) Robbins' reliance on these and the other cases she cites is premised upon her characterization of the video evidence as contradicting Plaintiff's amended complaint allegations and showing that Plaintiff exhibited violent, uncooperative, and aggressive behavior during the incident. (*Id.* at PageID.142–43.) Contrary to Robbins's assertion, however, the video evidence is not *Scott*-worthy; it does not "blatantly contradict[]" Plaintiff's allegations. *Scott* 550 U.S. at 380. Much of Robbins's argument centers on Plaintiff's conduct inside of the holding cell and his exit into the lobby/control center hallway. (*Id.* at PageID.142.)

Assuming that the holding cell and lobby videos demonstrate that Plaintiff was aggressive and uncooperative, the question is whether Plaintiff still presented those concerns once he was transferred to the isolation cell. In this regard, the isolation cell video supports Plaintiff's allegation that Robbins's use of pepper spray was unreasonable because once inside the isolation cell, he did not resist the guards, was subdued and partially restrained, and exhibited no active resistance. (ECF No. 35 at PageID.123–24.) Indeed, nothing in the video indicates that Plaintiff resisted the guards as they held him down to remove the handcuffs, and once the handcuffs were removed, he remained on the floor with his arms underneath him or to his side and did not make any furtive movement. At the time Robbins deployed her pepper spray, the remaining male guard had his taser trained on Plaintiff's neck/head area, and Plaintiff appeared under control. While audio might have provided additional context for Robbins's use of pepper spray, nothing in the video itself indicates that such force was warranted.

Robbins is not entitled to qualified immunity at this juncture. At the time of the incident in question, the Sixth Circuit had held that use of a chemical agent on a compliant prisoner violates

9

clearly established law. *See Roberson v. Torres*, 770 F.3d 398, 407 (6th Cir. 2014) (guard's alleged use of chemical spray to wake a sleeping prisoner, without apparent necessity or mitigating circumstances, violated clearly established law); *Williams v. Curtin*, 631 F.3d 380, 384 (6th Cir. 2011) (prisoner stated an Eighth Amendment claim where, in response to the prisoner's inquiry about why he was told to "pack up," an assault team used a chemical agent on him). Other circuits have reached the same conclusion. *See Foulk v. Charrier*, 262 F.3d 687, 701–02 (8th Cir. 2001) (finding sufficient evidence to support an Eighth Amendment violation where the prisoner testified that he was sprayed in the face with pepper spray even though he was compliant).

The Sixth Circuit's more recent decision in *Guy v. Metropolitan Government of Nashville & Davidson County*, 687 F. App'x 471 (6th Cir. 2017), which involved an Eighth Amendment claim, provides guidance here. In that case, the plaintiff went to the officers' station to inquire about medical care after the defendant had ordered inmates to return to their cells. When the plaintiff did not voluntarily leave, the defendant placed a hand on her shoulder, turned her, and directed her forward. The plaintiff walked away slowly but stopped and began to turn toward the defendant with her hands down. As the plaintiff turned toward the defendant, the defendant sprayed chemical spray in the plaintiff's face. *Id.* at 473. The court held that the defendant was not entitled to qualified immunity. Regarding the clearly established prong, the court stated:

> [v]iewing the evidence in the light most favorable to plaintiff, we conclude that a reasonable officer would have been on notice in September 2013 that use of a chemical agent on a non-threatening pretrial detainee who did not comply with the officer's verbal orders and then passively resisted an open-handed escort by hesitating and stopping to turn to ask again about seeing a nurse would amount to constitutionally excessive force.

*Id.* at 476; *see also Young v. Kent Cnty. Sheriff's Dep't*, No. 21-1222, 2022 WL 94990, at *5 (6th Cir. Jan. 10, 2022) (Applying *Guy* to a claim under *Kingsley* and observing that "a reasonable officer would have been on notice in February 2019 that using a chemical agent on a subdued,

partially incapacitated detainee who did not comply with officer's order would amount to constitutionally excessive force").[1]

Because the videos do not conclusively resolve the factual issues in this case, Robbins's request for qualified immunity is premature. *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019) ("[W]hile we always hope to resolve qualified immunity claims at the earliest possible point in the litigation, we cannot resolve such claims when we need more factual development to do so."); *cf. Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 695 (6th Cir. 2022) (observing that "any presumption [against granting qualified immunity at the motion-to-dismiss stage] only has bite when the 'clearly established' inquiry turns on 'case-specific details that must be fleshed out in discovery'") (quoting *Crawford v. Tilley*, 15 F.4th 752, 765 (6th Cir. 2021)).

### IV. Conclusion

For the reasons set forth above, I recommend that the Court **deny** Defendant Robbins's Motion to Dismiss. (ECF No. 36.)

Dated: July 10, 2023

/s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

---

[1] Defendant Robbins contends that *Guy* cannot clearly establish the law because it is unpublished and nonbinding. (ECF No. 45 at PageID.188 n.1.) The case she cites, *Crocker v. Beatty*, 995 F.3d 1232, 1241 n.6 (11th Cir. 2021), is an Eleventh Circuit case. In *Young*, the Sixth Circuit rejected the same argument and found that *Guy* could clearly establish the law. 2022 WL 94990, at * 5. In any event, the other cited cases are specific enough to clearly establish that use of pepper spray on a detainee who is complaint and non-threatening violates the constitution.

## NOTICE TO PARTIES

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).