UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PERRY PIERCE,

      Plaintiff,                                       Hon. Hala Y. Jarbou

v.                                                        Case No. 1:22-cv-863

P. BAILEY, et al.,

      Defendants.
_____/

**REPORT AND RECOMMENDATION**

      Plaintiff Perry Pierce, who is currently incarcerated with the Michigan Department of Corrections, filed this action pursuant to 42 U.S.C. § 1983 based on events that occurred on January 29, 2022, while he was an arrestee detained in the Berrien County Jail (BCJ). Plaintiff's sole remaining claim is his excessive force claim against Sgt. (now Lieutenant) Kristen Robbins.

      Presently before me is Defendant Robbins's Motion for Summary Judgment. (ECF No. 78.) The motion is fully briefed and ready for decision. I find that oral argument is unnecessary as the matter may be decided on the briefs and evidentiary record. For the reasons that follow, pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED** and this action be **dismissed**.

**I. Background**

      Late at night on January 28, 2022, Benton Township Police Department officers arrested Plaintiff for assault and/or resisting or obstructing a police officer and transported him to the BCJ. (ECF No. 79-2.) At the time of his arrest, Plaintiff had a mental health diagnosis of bipolar disorder and paranoid schizophrenia, with suicidal ideation. (ECF No. 35 at PageID.122; ECF No. 79-13

at PageID.388.) Although Plaintiff had been prescribed psychotic medication, he had not taken it for at least a couple of days and was experiencing a psychological episode or mental disturbance. (*Id.* at PageID.388–89.) When the police arrived with Plaintiff at the BCJ, deputies placed him in a holding cell with approximately eleven other inmates, where he remained until approximately 4:35 a.m. on January 29, 2022. (ECF No. 35 at PageID.122; ECF No. 79-13 at PageID.379.) Defendant Robbins had been informed that Plaintiff had been arrested on multiple counts of resisting and obstructing and that the arresting officers had tased him prior to bringing him to the BCJ. (ECF No. 79-14 at PageID.396.)

In the holding cell later in the morning of January 29, Plaintiff stood by the door and became disruptive and began calling out to the guards in an "agitated" manner. (ECF No. 35 at PageID.122; ECF No. 79-13 at PageID.379.) Plaintiff began beating on the cell windows, and Robbins walked over to the cell door to check on him. Referring to the deputies, Plaintiff yelled, "I will kill one of you honkies!" (ECF No. 79-3 at PageID.310.) Robbins radioed for additional staff to come to her area, and several individuals responded. (*Id.*) Plaintiff was verbally hostile toward and upset with Sgt. O'Brien, who responded to Robbins's request. (ECF No. 79-13 at PageID.380.) Plaintiff also became angry and belligerent toward Lt. Erin Kuhl, who also responded, regarding release of his property to his family. (ECF No. 79-15 at PageID.430.) Plaintiff did not like Lt. Kuhl's response and again said that he wanted to kill deputies. (*Id.*) Plaintiff then began kicking and beating on the windows of the holding cell. Lt. Kuhl thus decided to move Plaintiff to an isolation cell that had no lower window that Plaintiff could kick and potentially break. (*Id.* at PageID.431.)

After additional staff arrived, six deputies gathered in front of the holding cell door. As the deputies prepared to open the door, Plaintiff assumed a fighting stance and yelled that he was going

2

to kill a deputy. (ECF No. 79-4 at PageID.397:ECF No. 79-18 at PageID.516.) The deputies moved closer to the door, and Plaintiff told Sgt. O'Brien that he was going to kill him. (ECF No. 79-15.) When the deputies opened the door to let Plaintiff out, Plaintiff exited aggressively into them. (ECF No. 35 at PageID.123; ECF No. 79-14 at PageID.397.) According to Plaintiff, he intended "to get through [the deputies] so they wouldn't be able to surround me. So I ran out." (ECF No. 79-13 at PageID.381.) The six deputies gained control of Plaintiff and assisted him to the ground. After applying handcuffs, the deputies carried Plaintiff by his arms and legs to the to the single-man isolation cell.

      Security video (Cell Video) shows that four deputies carried Plaintiff into the isolation cell, placed him on the ground on his stomach, and rotated his body so that his head was facing away from the door.[1] Five deputies then knelt on or next to Plaintiff to restrain him while Lt. Kuhl proceeded to remove the handcuffs. (Cell Video.) The deputies gave multiple orders to Plaintiff not to resist, to stay on the ground, and not to move until he was told to get up. (ECF No. 79-3 at PageID.311; ECF No. 79-13 at PageID.383, 389; ECF No. 79-14 at PageID.397, 412; ECF No. 79-15 at PageID.436; ECF No. 79-18 at PageID.517.) However, Plaintiff continued to verbally threaten the deputies while they restrained him. (*Id.*) During this time, Defendant Robbins stood next to the doorway, removed her chemical spray from her belt, and shook it. (Cell Video.)

      After about 30 seconds, Lt. Kuhl removed the handcuffs from Plaintiff, and the deputies began to leave the cell one at a time. (*Id.*) Deputy Phillips ordered Plaintiff not to move and to keep his hands behind his back. (ECF No. 79-15 at PageID.438; ECF No. 79-18 at PageID.517.) When only Deputy Phillips and Sgt. O'Brien remained, Deputy Phillips moved behind Plaintiff, placed his hand on Plaintiff's crossed legs, and told Sgt. O'Brien to exit the cell. (Cell Video.) As

---

[1] Defendant Robbins presented this video in support of her previous motion to dismiss.

Sgt. O'Brien left, Plaintiff turned his head to the left and moved his arms from behind his back to his side, with his right forearm on the ground almost touching the top of his right shoulder and his left arm bent close to the ground in a pushup-like position. (*Id.*) Deputy Phillips immediately placed his hand in the middle of Plaintiff's back and applied pressure to hold him down while he continued his threats. (*Id.*; ECF No. 79-14 at PageID.397; ECF No. 79-18 at PageID.517.) Deputy Phillips then removed his taser and aimed it at Plaintiff's back, warning him that he would use it if Plaintiff attempted to get up. Plaintiff responded that he did not care because he had already been tased five times and said, "I will kill you." (ECF No. 79-3 at PageID.312; ECF No. 79-18 at PageID.517.) Defendant Robbins, who had previously exited the cell, quickly stepped inside and applied a brief burst of chemical spray toward Plaintiff's head, and she and Deputy Phillips exited the cell. (Cell Video.)

After closing the cell door, Defendant Robbins opened the small cell window from the outside and instructed Plaintiff to decontaminate himself by flushing his eyes in the sink. (*Id.*; ECF No. 79-13 at PageID.384; ECF No. 79-14 at PageID.399.) Plaintiff followed the directions and walked to the sink and washed his face and eyes with water. (Cell Video; ECF No. 79-13 at PageID.384.) Robbins also informed the jail nurse about her use of chemical spray, and the nurse went to Plaintiff's cell to check on him. (ECF No. 79-13 at PageID.384; ECF No. 79-14 at PageID.399.) However, Plaintiff did not request treatment, as any pain or discomfort from the chemical spray resolved within 30 to 40 minutes. (ECF No. 70-13 at PageID.386–87.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty*

4

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. Discussion

Robbins contends that she is entitled to qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant violated a right so clearly established "that every 'reasonable official would [have understood] that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

A.   **Constitutional Violation**

The Fourth Amendment prohibits the use of excessive force against someone "in the course of an arrest, investigatory stop, or other 'seizure.'" *Graham v. Connor*, 490 U.S. 386, 395 (1989). Fourth Amendment protections apply to "one who has been arrested but has not yet received a judicial determination of probable cause, either through an arrest warrant or a post-arrest probable cause hearing." *Colson v. City of Alcoa*, 37 F.4th 1182, 1187 (6th Cir. 2022) (citing *Aldini v. Johnson*, 609 F.3d 858, 866 (6th Cir. 2010)). Because Plaintiff had not received a probable cause hearing at the time of the incident in question, his excessive force claim is properly analyzed under the Fourth Amendment.

In evaluating an excessive force claim under the Fourth Amendment, the touchstone is whether the officer's conduct was "objectively reasonable" in light of the facts and circumstances surrounding the incident. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (the relevant inquiry in a pretrial detainee excessive force claim is whether the force purposefully or knowingly used was objectively reasonable). "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396). A defendant's subjective intentions are irrelevant to a Fourth amendment analysis. *Phelps*. 286 F.3d at 299. The inquiry is "highly fact-dependent" and "must take into account the 'perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.'" *Coley v. Lucas Cnty.*, 799 F.3d 530, 538 (6th Cir. 2015) (quoting *Kingsley*, 576 U.S. at 397). In assessing reasonableness, a court must examine the "'totality of the circumstances' surrounding the officer's use of force." *Palma v. Johns*, 27 F.4th 419, 428 (6th Cir. 2022) (quoting R*oell v. Hamilton Cnty.*, 870 F.3d 471, 480 (6th Cir. 2017)). A court must also consider the government's

6

"legitimate interests" in managing the facility, which include "preserv[ing] internal order and discipline and . . . maintain[ing] institutional security." *Coley*, 799 F.3d at 538 (internal quotations omitted). The *Kingsley* Court observed:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective c*ircumstances potentially relevant to a determination of excessive force.*

*Kingsley*, 576 U.S. at 397 (emphasis added) (internal citations omitted).

The Sixth Circuit has recognized that "[t]he use of a chemical weapon such as pepper spray is not per se unreasonable." *Vaughn v. City of Lebanon*, 18 F. App'x 252, 266 (6th Cir. 2001). As with other uses of force, reasonableness is highly fact specific. In general, when a suspect actively resists arrest or detainment or is non-compliant, a police officer does not violate the Fourth Amendment by employing reasonable force, such as pepper spray or a taser. *See Caie v. West Bloomfield Twp.*, 485 F. App'x 92, 97 (6th Cir. 2012) (officers' use of a taser on an individual who was highly agitated, suicidal, and intoxicated was a reasonable use of force, even though the plaintiff had been taken to the ground and was arguably "subdued" because the plaintiff remained uncooperative); *Williams v. Sandel*, 433 F. App'x 353, 361–63 (6th Cir. 2011) (police officers' use of baton strikes, pepper spray, and multiple taser activations was not excessive where, from the beginning of the encounter to the end, the plaintiff, who was naked and high on drugs, evaded officers and resisted arrest and posed an immediately threat of injury or death to himself, the officers, and other motorists); *Cabaniss v. City of Riverside*, 231 F. App'x 407, 413 (6th Cir. 2007) (affirming summary judgment for defendant officer who used pepper spray on unsecured suspect in back of patrol car when the suspect disregarded orders to stop repeatedly banging his head on

7

partition and officers had information that suspect might be suicidal). "Active resistance includes physically struggling with, threatening, or disobeying officers." *Kent v. Oakland Cnty.*, 810 F.3d 384, 392 (6th Cir. 2016) (internal quotation marks omitted). In contrast, it is well established that use of force on a suspect who is restrained, cooperative, and/or no longer resisting amounts to excessive force. *See Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006) ("We have held repeatedly that the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law."); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004) (concluding that officers used excessive force on a handcuffed suspect who had stopped resisting by spraying the suspect with pepper spray and placing substantial pressure on his back while in the prone position).

In the context of jails and prisons, the Sixth Circuit has held that use of pepper spray to force an inmate's compliance with direct orders is not excessive. *See Cretacci v. Call*, 988 F.3d 860, 869 (6th Cir. 2021) (holding that the defendant corrections officer's use of pepperballs on a pretrial detainee who failed to comply with an order to get on the ground was reasonable given that the defendant used a non-lethal weapon that caused only minor injuries that lasted a few days); *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (holding that defendant corrections officers did not violate the Eighth Amendment by using pepper spray on the plaintiff when he refused their repeated orders to leave the shower); *Siggers v. Renner*, 37 F. App'x 138, 140–41 (6th Cir. 2002) (use of pepper spray to force the plaintiff to submit to a haircut was not excessive). However, even under the more lenient Eighth Amendment standard, an officer's use of a chemical agent on a compliant inmate violates clearly established law. *See Roberson v. Torres*, 770 F.3d 398, 407 (6th Cir. 2014).

8

Defendant Robbins contends that her use of a single, one-second burst or pepper spray in response to Plaintiff's active resistance—his failure to comply with repeated orders not to move and constant verbal hostility and threats towards the deputies—warranted the use of some force. Robbins further notes that the force she deployed was relatively brief and minimal, causing Plaintiff only brief discomfort that resolved within a half hour or so. Finally, Robbins notes that, contrary to Plaintiff's allegation in his First Amended Complaint (ECF No. 35 at PageID.124), Plaintiff fails to present evidence showing that the chemical spray negatively impacted his vision.

Plaintiff responds that, contrary to Robbins's assertions, the video shows that he did not actively resist the deputies after they moved him to the isolation cell. He further contends that he did not disobey any order and did not threaten the deputies. Thus, Plaintiff argues, construing the evidence, including the surveillance video, in a light most favorable to him, there was no need for use of force, and a reasonable jury could conclude that Robbins's use of pepper spray was excessive.

Previously, in addressing Robbins's motion to dismiss, I recommended that the case proceed because the video supported Plaintiff's assertion that he did not resist the deputies and it did not blatantly contradict his allegations. (ECF No. 48 at PageID.203.) The summary judgment materials, however, provide more context to the incident. The totality of the circumstances informing the analysis must begin with Plaintiff's conduct in the general holding cell. As Plaintiff concedes, at the time, he was suffering a psychological episode and was causing a disturbance. (ECF No. 79-13 at PageID.388–89.) Plaintiff was also upset with the deputies and threatening them with comments that he wanted to kill one or more of them. (ECF No. 79-13 at PageID.380; ECF No. 79-15 at PageID.430.) Plaintiff assumed a fighting stance, and when Sgt. O'Brien opened the holding cell door to allow Plaintiff to come out, he rushed aggressively into the deputies, who

9

physically struggled with him in taking him to the ground and applying handcuffs. Although Plaintiff contends that he complied with the deputies' orders once they placed him in the isolation cell and did not move, it is clear, at a minimum, that he disregarded Deputy Phillips's order to keep his hands behind his back and not to move by moving his hands from his back to his side. (ECF No. 79-13 at PageID.383; ECF No. 79-15 at PageID.438; ECF No. 79-18 at PageID.517.) Moreover, Plaintiff continued to threaten to kill the deputies even after Deputy Phillips warned Plaintiff that he would use his taser. (*Id.*) Although Plaintiff cites his own deposition testimony denying that he threatened to kill any of the deputies (ECF No. 81 at PageID.530 (citing ECF No. 79-13 at PageID.382)), he conceded that he "possibly . . . could have said something," but he does not know what he would have said. (ECF No. 79-13 at PageID.382.) Plaintiff's admission is consistent with his testimony that he did not recall being handcuffed or being carried to the isolation cell, likely because he was "under the influence of a mental disturbance." (*Id.* at PageID.388–89.)

While it is true that Plaintiff was handcuffed and restrained for most of the incident, once the deputies had removed the handcuffs, Plaintiff had free use of his hands. Even though Plaintiff was not in a classic "push-up" position, his hands were still situated such that he could have quickly turned on Deputy Phillips. Faced with a prisoner who was threatening bodily harm, it cannot be said that Defendant Robbins's use of a brief burst of pepper spray—which caused only temporary burning and discomfort and was used to neutralize Plaintiff so that all of the deputies could safely exit the cell—was an unreasonable use of force. *See Thompson v. Joseph*, No. 1:12-cv-992, 2014 WL 1685918, at *7 (S.D. Ohio Apr. 29, 2014), *report and recommendation adopted*, 2014 WL 2172894 (S.D. Ohio May 23, 2014) (concluding that the defendant's use of brief burst of pepper

spray in response to the plaintiff's verbal threat to spit on the defendant to force the inmate to retreat back into his cell was not excessive force).

Accordingly, I recommend that the Court conclude that Plaintiff fails to create a genuine issue of material fact that Defendant Robbins's use of pepper spray amounted to excessive force.

### B.     Clearly Established Law

The clearly established prong focuses on the state of the law at the time the alleged violation occurred. "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)). As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). It is not enough to show that the right is established at "'a high level of generality.'" *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017) (quoting *Ashcroft*, 563 U.S. at 742). "[A] plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Id.* at 993 (quoting *White*, 580 U.S. at 79). Stated differently, "[o]n both the facts and the law, specificity is [a court's] guiding light." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019). "An official's conduct flunks this 'clearly established' test only if the conduct's unconstitutionality was 'beyond debate' when the official acted, such that any reasonable person would have known that it exceeded constitutional bounds." *DeCrane v. Eckart*, 12 F.4th 586, 599 (6th Cir. 2021). To determine whether a right is clearly established, a district court within the Sixth Circuit may consider binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or

11

other circuits that is directly on point. *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010) (quoting *Risbridger v. Connelly*, 275 F.3 565, 569 (6th Cir. 2002)).

Plaintiff fails to cite relevant authority that clearly establishes that Defendant Robbins's conduct violated Plaintiff's constitutional rights. Plaintiff cites *Guy v. Metropolitan Government of Nashville & Davidson County*, 687 F. App'x 471 (6th Cir. 2017), but given the full summary judgment record presented in this case, there are material differences between the two cases. In contrast to Plaintiff's actions here, the plaintiff in *Guy* did not create a disturbance or verbally abuse the defendant or other guards. Moreover, unlike Plaintiff, the plaintiff in *Guy* did not aggressively resist officers during a cell move or make repeated threats to kill the officers. Thus, *Guy* could not have provided Robbins fair and clear warning that her use of pepper spray was unconstitutional in the particular circumstances presented here.

## IV.   Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendant Robbins's Motion for Summary Judgment. (ECF No. 78.)

Dated: April 26, 2024                                              /s/ Sally J. Berens
                                                                             SALLY J. BERENS
                                                                             U.S. Magistrate Judge

## NOTICE TO PARTIES

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).